Robert **HECKSHER**, Appellant,

v.

**FEDERAL COMMUNICATIONS COM-
MISSION**, Appellee,

Sunshine State Broadcasting Company,
Inc., Intervenor.

No. 13794.

United States Court of Appeals
District of Columbia Circuit.

Argued Nov. 8, 1957.

Decided Jan. 23, 1958.

Mr. Russell Rowell, Washington, D. C.,
with whom Messrs. Frank Roberson and
Frank U. Fletcher, Washington, D. C.,
were on the brief, for appellant.

Mr. Edgar W. Holtz, Associate Gen.
Counsel, Federal Communications Com-
mission, for appellee.

Mr. Warren E. Baker, Gen. Counsel,
Federal Communications Commission,
Mr. Richard A. Solomon, Asst. Gen.
Counsel, Federal Communications Com-
mission, Mr. Charles C. McCarter, Coun-
sel, Federal Communications Commis-
sion and Mr. Henry Geller, Counsel, Fed-
eral Communications Commission, at the
time the brief was filed, were on the
brief for appellee.

Mr. Daniel R. Ohlbaum, Counsel, Fed-
eral Communications Commission, at the
time the record was filed, also entered an
appearance for appellee.

Mr. Harry J. Daly, Washington, D. C.,
with whom Mrs. Lenore G. Ehrig, Wash-
ington, D. C., was on the brief, for in-
tervenor.

Before EDGERTON, Chief Judge, and PRETTYMAN and BASTIAN, Circuit Judges.

PRETTYMAN, Circuit Judge.

This is an appeal from an order of the Federal Communications Commission. The Commission granted an application for a standard radio station (WBRD) at Bradenton, Florida. Our appellant, Hecksher, owner of an existing station (WMYR) at Fort Myers, Florida, filed a petition for reconsideration, claiming that the new station would cause objectionable interference to his station. The Commission denied the petition without hearing.

The Commission says Hecksher's petition failed on its face to indicate objectionable interference from the new station. Hecksher says, at the present point in the proceeding, that he at least raised a substantial question as to objectionable interference and therefore was entitled to a hearing.

 The law on the point at issue is well settled and clear. It is that, if the petitioner alleges facts which, if established, raise a substantial question as to his rights, he must have a hearing.[1]

The regulations of the Commission prescribe the method of determining interference that may be caused by a proposed assignment, or an existing assignment, during the daytime.[2] That is the problem in the present case. The regulations provide[3] that this interference should be determined, "when possible," by measurements on the frequency involved and by means of curves described in another section of the regulations.[4] The regulations require[5] that, in determining interference based upon field intensity measurements, the outer boundary of the protected service area must first be established; then at this boundary the interfering signal must be measured. This section specifically states: "The effective field of the antennas in the pertinent directions of the stations must be established and all measurements must be made in accordance with § 3.-186."

The latter section[6] provides that certain requirements shall govern the taking of data on the field intensity produced. One of these requirements is that beginning near the antenna "measurements shall be made on eight or more radials," at certain intervals. The section specifies that, where the antenna is rurally located and unobstructed measurements can be made, a certain number of measurements must be made, but that, where the antenna is located in a city "where unobstructed measurements are difficult to make," measurements shall be made on each radial at as many unobstructed locations as possible. The regulation also makes provision for "wave tilt" measurements to ascertain abnormal intensities due to abrupt changes in ground conductivity or reflected waves. The regulations provide[7] that, where measurements taken in accord with the requirements are not available, the groundwave intensity must be determined by means of a conductivity map; and that "It is recognized that in areas of limited size or over a particular path, the conductivity may vary widely from the values given; therefore, these maps are to be used only when accurate and acceptable measurements have not been made."

The regulations clearly state that measurements of field intensities shall be made on radials from the station. The validity of that requirement is agreed to by all parties. But the regulations contain references to rural locations and unobstructed measurements, to abnormal

1. L. B. Wilson, Inc., v. Federal Communications Comm., 83 U.S.App.D.C. 176, 170 F.2d 793 (D.C.Cir.1948); Harbenito Broadcasting Co. v. Federal Communications Comm., 94 U.S.App.D.C. 329, 218 F.2d 28 (D.C.Cir.1954).

2. 47 C.F.R. § 3.181 et seq. (Supp.1956).

3. Id. § 3.183(a).

4. Id. § 3.184.

5. Id. § 3.183(b).

6. Id. § 3.186.

7. Id. § 3.183(c).

intensities and reflected waves, and to instances where measurements in accord with the requirements are not available. These references indicate some degree of elasticity in the basic requirement. So the problem is what is meant by "on radials". Hecksher asserts, and the Commission does not deny, that "on radials" does not mean literally and precisely on a radial without deviation. Hecksher asserts that some deviation off the exact, true line is allowed, and he says the measurements he took are within that allowable deviation in view of the nature of the terrain. The Commission says his measurements are so far off the radial as to be in gross violation of the regulations and not acceptable on their face.

Hecksher says much of the area between Fort Myers and Bradenton along the radial line is not readily accessible, due to swamps, keys, etc. His measurements were taken along roads, which ran, or "wandered", from some distance east to some distance west of the radial line. The distance between the most easterly and the most westerly measurements was some seventeen miles. The Commission says the great majority of the area is not inaccessible and that a large number of measurements could have been made along the actual radial; at least enough to comply substantially with the requirements.

■ There is a direct conflict, therefore, as to what constitutes compliance with Section 3.186 of the regulations. This conflict involves problems and practices in radio engineering. The issue is, of course, ultimately the legal issue of compliance, but the legal result must flow directly from resolution of the technical engineering questions involved. No authority construing the permissible deviation from the true radial under Section 3.186 has been cited to us, and we have found none. Common sense dictates that a technical regulatory standard, written by persons skilled in the profession of radio engineering, to be followed by others skilled in the same profession, should be construed, at least in the first instance, by radio engineers. We think Hecksher raised a substantial question as to the meaning of the regulations in the terms of the facts of the case. He had a right to protection within his normally protected contour. We therefore remand to the Commission in order that he may be heard on the issue of compliance with Section 3.186.

■ We do not mean to order at this point a full evidentiary hearing. In Harbenito we said: [8]

"This court [in L. B. Wilson, Inc., v. Federal Communications Comm. supra note 1] was unanimous in the view that, if a petition for reconsideration of a construction permit states facts which raise a substantial question as to objectionable interference with an existing license, the petitioner is entitled to a hearing. The difficulty concerns the type of hearing to which such a petitioner is entitled. This court held that the Commission could, as a first step, test the validity of the petition as if upon demurrer and, after oral argument, rule upon its sufficiency as a matter of law assuming its allegations to be correct. That view was adhered to in the subsequent WJR cases."

We adhere to that view here. The Commission may as an initial procedural step subject Hecksher's claims to a test as a matter of law upon an oral argument. If it then appears that there are disputes as to material facts, an evidentiary hearing limited to those facts should be ordered. The order of the Commission denying appellant's petition for reconsideration will be vacated and the case

Remanded.

8. Supra note 1, 94 U.S.App.D.C. at page 332, 218 F.2d at page 31.